UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


RYAN DALE ESTES,

       Plaintiff,

v.                                  Case No. 2:20-cv-225-JLB-NPM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

**REPORT AND RECOMMENDATION**

Plaintiff Ryan Dale Estes seeks judicial review of a denial of Social Security

disability insurance benefits. The Commissioner of the Social Security

Administration filed the transcript[1] of the proceedings, and the parties filed a Joint

Memorandum (Doc. 27). As discussed in this report, the decision of the

Commissioner should be affirmed.

**I.    Eligibility for Disability Benefits and the ALJ's Decision**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment that can be

---

[1] Cited as "Tr." followed by the appropriate page number.

expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.[2] The impairment must be severe, making the plaintiff unable to do his previous work or any other substantial gainful activity that exists in the national economy.[3]

## B.    Factual and procedural history

Estes is 47 years old and has at least a high school education. (Tr. 256, 367, 386). He served in the U.S. Marine Corps and worked as a self-employed landscaper from 1996 through 2011. (Tr. 367, 386).

On May 25, 2018, Estes applied for a period of disability and disability insurance benefits. (Tr. 367). He asserted an onset date of September 1, 2014, alleging disability due to the following: PTSD combat; anxiety; anger; Lyme disease; disassociation; left knee ACL tear and pain; overall pain; depression; severe isolation; flashbacks; and overwhelmed and overall confusion. (Tr. 295, 367, 385).

Estes's application was administratively denied initially on June 15, 2018, and upon reconsideration on September 21, 2018. (Tr. 107, 281-304). At Estes's request, an Administrative Law Judge ("ALJ") held a hearing on May 8, 2019, concerning the denial of disability benefits. (Tr. 243-280, 317-318). Estes appeared pro se at the hearing and signed a "Waiver of Representation" form. (Tr. 239-241, 362). The ALJ

[2] *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

issued an unfavorable decision on July 30, 2019, finding Estes not disabled from September 1, 2014, through December 31, 2016, the date last insured. (Tr. 104-121).

On February 10, 2020, the agency's Appeals Council denied Estes's request for review. (Tr. 5-11). And on February 19, 2020, the Appeals Council declined to reopen the decision. (Tr. 1-4). Estes then filed a Complaint (Doc. 1) with this Court on April 1, 2020, and the case is ripe for review.

## C.    The ALJ's decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d

1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111, (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See Washington*, 906 F.3d at 1359; *see also* 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the

existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

At step one of the evaluation, the ALJ found Estes had not engaged in substantial gainful activity since his alleged onset date. (Tr. 109). At step two, the ALJ characterized Estes's severe impairments as: "chronic Post Traumatic Stress Disorder (PTSD), cannabis dependence and alcohol abuse in two-year remission." (Tr. 109). At step three, the ALJ determined Estes did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 110).

As the predicate to step four, the ALJ arrived at the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant has no exertional limitations that implicitly include the performance of sedentary to heavy work. He has no limitations regarding sitting, standing and/or walking in an eight-hour workday. He has no postural limitations with the exception of no climbing of ropes and scaffolds, but ladders are not affected. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. No work with vibratory tools or equipment. In the course of work, he is to avoid exposure to job environments with loud noise, which is more than moderate noise that could trigger a startle reaction. He retains the capacity to understand, remember, and carry-out simple instructions and perform simple routine repetitive tasks as consistent with unskilled work. In the course of work, the claimant is to have no in-person contact with the public with the exception that incidental contact is not precluded. The

> claimant is to have only occasional contact with coworkers and
> supervisors, occasional being defined as occasional interaction
> and coordination, but not necessarily proximity to the same.

(Tr. 112). At step four, relying on the testimony of the vocational expert, the ALJ found Estes was unable to perform any past relevant work. (Tr. 120).

Finally, at step five, the ALJ found Estes could perform jobs that existed in significant numbers in the national economy. (Tr. 120). As support, the vocational expert identified four representative occupations an individual with Estes's age (42 years old on the date last insured), education (at least a high school education), work experience and RFC could perform:

(1) Dishwasher, DOT 317.687-010, Medium, SVP 2, 275,000 jobs nationally

(2) Laundry Laborer, DOT 361.687-018, Medium, SVP 2, 52,500 jobs nationally

(3) Photocopy Machine Operator, DOT 207.685-014, Light, SVP 2, 28,300 jobs nationally

(4) Marker, DOT# 209.587-034, Light, SVP 2, 145,000 jobs nationally, reduced by 50% for the occasional social limitations and no contact with the public

(Tr. 120-121).[4] The ALJ, therefore, concluded that Estes had not been under a disability within the meaning of the Social Security Act from the alleged onset date through the date last insured. (Tr. 121).

---

[4] The DOT numbers refer to the Dictionary of Occupational Titles and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled, with the "SVP" (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

## II.   Analysis

Estes's appeal presents the following issues:

(1)   Whether Estes made a knowing waiver of his right to representation.

(2)   Whether the ALJ erred at step two by not finding depression and anxiety were severe impairments.

(3)   Whether the ALJ adequately considered Estes's physical impairments.

(4)   Whether the ALJ properly found Estes could perform full-time work on a regular and continuing basis.

(5)   Whether the jobs cited by the ALJ fit within the RFC.

(Doc. 27, pp. 14, 23, 33, 40, 44).

### A.   Standard of review

The Court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the evidence must be viewed as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), a federal court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.    Whether Estes made a knowing waiver of his right to representation**

Estes asserts the ALJ failed to ensure he understood his right to be represented and the availability of free or contingent representation, particularly given that Estes had "severe" chronic PTSD. (Doc. 27, pp. 14-18). The Eleventh Circuit has long recognized that "'[a] Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ.'" *Reynolds v. Soc. Sec. Admin.*, 679 F. App'x 826, 827 (11th Cir. 2017) (quoting *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). As such, the Commissioner has a duty to notify a claimant in writing about the options for obtaining a lawyer or representative and that a legal services organization may provide legal services free of charge. *Id.* (citing 42 U.S.C. § 406(c)). If a claimant is not properly informed of his right to

representation, either in a prehearing notice or at the hearing, a claimant cannot knowingly and intelligently waive his statutory right to counsel or representation. *Id.* at 827-828 (citing *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982)).[5]

Here, Estes was and remains well aware of his right to representation as evinced by his being represented during the Appeals Council proceeding (Tr. 102-103), and before this Court. And Estes was sent several written notices at various stages of the administrative proceeding about his right to be represented. (Tr. 306, 312, 320, 340). The notices at the hearing level also included a document titled, "Your Right to Representation," which provided detailed information about representation. (Tr. 323-328, 345-346). One of these notices included contact information for an organization that could assist him in obtaining representation and a list of organizations that provide free legal services. (Tr. 325-328). Even in his "Request for Hearing by Administrative Law Judge," Estes acknowledged: "I

---

[5] Any suggestion that Estes lacked the capacity to understand this right and the effects of waiving it are belied by the record. Just as a diagnosis, without more, is insufficient to establish the existence of a functional limitation, *Trask v. Saul*, No. 8:20-cv-352-T-24SPF, 2021 WL 537177, *6 (M.D. Fla. Jan. 21, 2021), *report and recommendation adopted*, No. 8:20-cv-352-SCB-SPF, 2021 WL 535403 (M.D. Fla. Feb. 12, 2021) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)), a diagnosis, without more, is insufficient to establish a claimant is incapable of waiving his right to counsel. So, Estes's diagnosis of PTSD, for example, does not categorically prevent him from making a knowing and voluntary waiver. (Doc. 27, p. 14). This is particularly true given the limited duty imposed by the Social Security regulations. *E.g.*, *Coven v. Astrue*, No. 5:08-cv-389-OC-GRJ, 2009 WL 4350184, *4 (M.D. Fla. Nov. 25, 2009), *aff'd sub nom. Coven v. Comm'r of Soc. Sec.*, 384 F. App'x 949 (11th Cir. 2010) ("The duty only requires the ALJ to provide a claimant with sufficient notice of her statutory right to have counsel represent her at her hearing before the ALJ.").

UNDERSTAND I HAVE A RIGHT TO BE REPRESENTED AND THAT IF I NEED REPRESENTATION, THE SOCIAL SECURITY OFFICE OR HEARING OFFICE CAN GIVE ME A LIST OF LEGAL REFERRAL AND SERVICE ORGANIZATIONS TO ASSIST ME IN LOCATING A REPRESENTATIVE." (Tr. 318).

Estes does not dispute that he received these multiple notices regarding his right to representation, nor does he assert he was actually confused about that right. In fact, he affirmed during the hearing that he received the mailed notices at his residence. (Tr. 242). On the same date as the hearing, Estes signed a Waiver of Right to Representation, in which he acknowledged that he had the right to be represented by an attorney or non-attorney. (Tr. 362). By signing the form, Estes also acknowledged that he decided to voluntarily waive his right to such representation for the ALJ hearing and that he had an opportunity to review the exhibit files and had no objection to admitting them into the record. (Tr. 362).

Finally, at the beginning of the hearing, the ALJ inquired whether Estes received and read the Right to Representation form. (Tr. 240). The ALJ –who, like Estes, was a military veteran (Tr. 255) – also asked Estes how he was feeling and if he would like a one-time continuance to try to get representation. (Tr. 240). Estes declined the offer. The ALJ responded that there was a legal aid option, but Estes cut her off and said he was "okay," and he will "just have faith in the system." The

ALJ confirmed once more whether Estes would like to proceed with the hearing without representation, and Estes responded affirmatively. (Tr. 240).

There is nothing in the record to suggest that Estes did not understand either his rights or his waiver of them, and the waiver should be found knowingly and voluntarily made. In short, Estes elected—as was his right—to proceed pro se before the ALJ. *See Coven v. Comm'r of Soc. Sec.*, 384 F. App'x 949, 950-951 (11th Cir. 2010) (affirming finding that claimant waived her right to representation after receiving three notices advising her of such right, being reminded by the ALJ that she could obtain representation, and executing a written waiver of her right to representation during the ALJ hearing).

Even if Estes's waiver was somehow insufficient, the ALJ nevertheless fulfilled her duty to develop a full and fair record, which attaches whether or not the claimant has representation. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). However, the ALJ has a *heightened* duty to develop the record "[w]hen the right to representation has *not* been [properly] waived." *Id.* (emphasis added); *Cox v. Astrue*, No. 811-cv-02860-T-35AEP, 2013 WL 1181448, at *11 (M.D. Fla. Feb. 7, 2013), *report and recommendation adopted*, No. 8:11-cv-2860-T35-AEP, 2013 WL 1181447 (M.D. Fla. Mar. 14, 2013) (citing *Robinson v. Astrue*, 235 Fed. Appx. 725, 727 (11th Cir.2007)). This special duty was not triggered for Estes, but even if the ALJ had a heightened duty, she still fulfilled it. For example, after noticing some

records from the Veteran Affairs ("VA") County Healthcare Center were missing, she left the record open so that she could obtain these records after the hearing (Tr. 243-249, 257, 266-268, 277-278), as well as Medical Source Statements from Dr. Jacob (Tr. 1648-1653) and licensed clinical social worker ("LCSW") Ginger Miller (Tr. 88-90), a power of attorney, and letters from Estes's fiancé and father (Tr. 398-407, 493-503).

Estes claims he was prejudiced because a representative could have requested a consultative examination to assess the impact of his knee impairment on his ability to work. (Doc. 27, pp. 17-18). But a "claimant cannot show prejudice by speculating that he would have benefitted from a more comprehensive hearing." *McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016) (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)). Here, the ALJ was not required to order a consultative examination. A consultative examination need not be obtained to establish a claimant's condition with absolute certainty, as the Social Security Act requires only substantial evidence to support an ALJ's findings. *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). The Eleventh Circuit has explained that, although the "administrative law judge has a duty to develop the record where appropriate," the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269

(11th Cir. 2007). And while an ALJ may request a consultative examination if the record is inconsistent or insufficient, that determination is discretionary under the regulations. *See* 20 C.F.R. §§ 404.1519a(a), (b), 404.1520b(b)(2)(iii). Accordingly, Estes has not shown prejudice.

In short, Estes waived his right to counsel, the ALJ fulfilled her duty to develop the record, and there is no prejudice. Thus, there is no reversible error.

### C.    Whether the ALJ erred at step two by not finding depression and anxiety were severe impairments

Estes next asserts the ALJ should have found depression and anxiety were severe impairments. (Doc. 27, pp. 23-27). He argues this was not harmless error because the ALJ did not include relevant limitations in the RFC and in hypothetical questions to the vocational expert. (Doc. 27, pp. 27-30).

A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months. *See* 20 C.F.R. § 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950 (11th Cir. 2014) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). While the standard for severity is low, the severity of an impairment "'must be measured in terms of its effect upon ability to work.'"

*D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 945 (11th Cir. 2010) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

"Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Instead, the ALJ is only required to consider a claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Here, the ALJ determined Estes had severe impairments and continued to step three. (Tr. 109-110).

Moreover, the ALJ found depression and anxiety were medically determinable impairments that did not rise to the "severe" level. (Tr. 110). She acknowledged that Estes was occasionally diagnosed with anxiety and depression,[6] but PTSD was the predominate underlying psychiatric impairment in addition to alcohol abuse and cannabis dependence. Still, she noted the possible effects of these impairments are fully accounted for in the RFC finding. (Tr. 110). While Estes

---

[6] As previously noted, a diagnosis, without more, does not establish the existence of a functional limitation. *Trask v. Saul*, No. 8:20-cv-352-T-24SPF, 2021 WL 537177, *6 (M.D. Fla. Jan. 21, 2021), *report and recommendation adopted*, No. 8:20-cv-352-SCB-SPF, 2021 WL 535403 (M.D. Fla. Feb. 12, 2021) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)).

pointed to several Global Assessment of Functioning (GAF) scores, the ALJ did not consider them because they are of limited evidentiary value. (Doc. 27, p. 26; Tr. 119). The ALJ explained GAF scores are subjectively assessed and only reveal snapshots of impaired and improved behavior. (Tr. 119); *see Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (noting "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'") (citing 65 Fed.Reg. 50746, 50764–50765 (Aug. 21, 2000). Even if the ALJ erred at step two, any error would be harmless because, in her RFC determination, the ALJ specifically considered and discussed the depression and anxiety symptoms that Estes alleged stemmed from his PTSD. *See Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014) (internal citations omitted) ("[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling."); *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013).

After summarizing the medical evidence, the ALJ observed that while Estes had several hospitalizations, emergency room visits, and treatment notes related to his PTSD symptoms, they were all also associated with his alcohol or marijuana consumption, which, by Estes's own reports, were significant factors in elevating his symptoms of PTSD. (Tr. 116). She also noted that when Estes abstained from

alcohol and marijuana, his objective examination findings ranged from essentially normal to no more than moderate. (Tr. 116). After a month-long rehabilitation program at the VA hospital from March 12 to April 23, 2015, Estes abstained from all substance abuse and was found to have significant objective improvements. (Tr. 116). In fact, his next treatment was not until nine months later, January 23, 2016, when he returned for PTSD symptoms exacerbated by alcohol use. (Tr. 116-117).

Estes relies heavily on the Medical Source Statement by LCSW Ginger Miller to support his argument that the ALJ erred by not including the mental limitations Miller assessed. (Doc. 27, pp. 27-29). However, Miller's December 4, 2019 opinion (Tr. 88-90) was not before the ALJ when she rendered her decision in July 2019. So, the ALJ could not have erred by failing to consider a statement that did not exist at the time of her decision. Rather, the ALJ found the opinion of Estes's treating psychiatrist, Dr. Thomas Jacob, persuasive and relied heavily on it. (Tr. 119). Although after the expiration of the date last insured, the ALJ noted that Dr. Jacob did not find that Estes had anxiety or depression as an active impairment and that his opinion was consistent with and supported by evidence in the record from the relevant time period. (Tr. 110, 119).

Residual functional capacity is the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a). It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations

that affect what [a claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). An ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(3).

For example, on January 23, 2016, Estes was admitted under an emergency petition (Tr. 512). Estes underwent a mental status exam that found he had anxious but cooperative behavior, normal movements, normal speech, normal thought process, logical associations, euthymic/anxious mood, no homicidal or suicidal ideation, no hallucinations, no delusions, fair insight and judgment, good reliability, and normal cognition (Tr. 517). He was released that night and diagnosed with moderate alcohol use disorder and PTSD (Tr. 517-518). This is consistent with other records. (*E.g.*, Tr. 702-703, 729, 733-734, 773).

The ALJ did not ignore the mental medical evidence but relied on it to support a fairly restrictive mental RFC, which limited Estes to unskilled work and no work with hazards, vibrations, loud noises, and occasional social interaction. The RFC also limited Estes to understanding, remembering, and carrying out simple instructions and simple routine repetitive tasks consistent with unskilled work. And the RFC limited Estes to no in-person contact with the public except for incidental contact, and only occasional contact with coworkers and supervisors. (Tr. 112, 117). Even Estes admits these restrictions accounted for his depression and anxiety. (Doc.

27, p. 29). The ALJ thoroughly considered the medical records and all of Estes's severe and non-severe impairments, including depression and anxiety, when formulating the RFC. (Tr. 112-119). And the ALJ incorporated mental limitations into the RFC in the hypothetical questions to the vocational expert. (Tr. 274). As such, there is no reversible error with respect to how the ALJ addressed Estes's anxiety and depression.

### D. Whether the ALJ adequately considered Estes's physical impairments

Estes claims the ALJ failed to develop the record concerning his left knee impairment by not ordering a consultative examination. However, Estes refers to treatment notes from 2006 or 2007 when he originally injured his knee on two separate occasions during combat training in the Marine Corps and then a treatment note from March 29, 2017, three months after the date last insured. (Doc. 27, p. 40). But these records were not relevant to the period in question, as Estes alleged disability beginning in September 2014. The ALJ need only develop a claimant's "complete medical history for at least the 12 months preceding the month in which [the claimant] file[s] [his] application unless there is a reason to believe that development of an earlier period is necessary or unless [the claimant] say[s] that [his] disability began less than 12 months before [he] filed [his] application. 20 C.F.R. § 404.1512(b)(1). In any case, the ALJ was aware of Estes's left knee impairment as the record includes the 2017 treatment note and other treatment notes

that refer to his original injuries from 2006 or 2007. (Tr. 711, 861, 869-870).

While the ALJ has a duty to develop a full and fair record, as previously discussed, it is the claimant's burden to show he is disabled within the relevant period. *See McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 691 (11th Cir. 2020); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (a claimant has the burden of proving disability, "and, consequently, he is responsible for producing evidence in support of his claim"); 20 C.F.R. § 404.1512(a)(1).

Estes also failed to identify any authority that the ALJ should have ordered a consultative examination of his left knee. (Doc. 27, pp. 40-41). It is well settled in the Eleventh Circuit that "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived." *Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (quoting *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)); *see, e.g.*, *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."). And the record contains hundreds of pages of evidence for the relevant period, so there is no obvious reason a consultative examination was warranted. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("The [ALJ] has a duty to develop the record where appropriate but is not

required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision.").

Estes next claims the ALJ failed to consider his urinary incontinence. He admits that the ALJ's refusal to find incontinence a "severe" impairment at step two "might be harmless error," but he was prejudiced because there were no relevant limitations in the RFC and hypothetical questions to the vocational expert. (Doc. 27, pp. 41-42).

During the hearing, the ALJ inquired as to Estes's physical impairments, and Estes explained he had incontinence that started around 2007 or 2008 when he returned from his deployment in Iraq. (Tr. 253). By the time of the hearing, Estes had not yet undergone a cystoscopy (a procedure to look inside the bladder with a camera), and he explained that he wore adult undergarments that gave him rashes. (Tr. 254, 265).

In her decision, the ALJ found Estes had a medically determinable impairment of urinary incontinence at step two. (Tr. 109-100). She explained that there were no significant objective medical findings or identification of limitations in the record. (Tr. 109). Treatment notes indicate Estes exhibited incontinence, but that Estes had never seen a urologist and declined a referral to one—his only prescribed treatment was wearing incontinence briefs. (*E.g.*, Tr. 514, 539, 695, 714, 936, 955-956, 1013). Some treatment notes specifically note that the incontinence was due to PTSD or

secondary to his anxiety. (*E.g.*, Tr. 628, 634, 702, 985, 1031, 1034, 1048). Although after his date last insured, the ALJ also noted that Estes underwent a cystoscopy in May of 2019 that produced normal results and that Estes declined any medication for the impairment. (Tr. 110). Moreover, the ALJ remarked that Estes wore adult undergarments for this impairment, and it did not cause any work-related limitations. She, therefore, found the incontinence produced no more than minimal limitations on Estes's ability to perform work-related activities and is non-severe. (Tr. 110).

Estes has not pointed to any objective medical evidence that supports a greater limitation. The ALJ did not discredit his incontinence as Estes suggests (Doc. 27, p. 42), but rather she found it was a medically determinable impairment. The ALJ simply did not find that the impairment rose to a "severe" level because there was no objective evidence to support a greater limitation. (Tr. 109-110). In sum, the Court should reject Estes's arguments that the ALJ did not adequately consider his physical impairments.

### E.   Whether the ALJ properly found Estes could perform full-time work on a regular and continuing basis

Estes next argues that there is not substantial evidence to support a finding that he can perform sustainable work. He claims the ALJ's step three finding of "moderate limitation" for "concentrating, persisting, or maintaining pace" supports the fact that he would be expected to miss work to such a degree that he could not perform "sustainable" work. (Doc. 27, pp. 33-34). This argument appears to be an

attack on the ALJ's RFC determination because it did not limit him to being off task or limit him to missing work at times. This argument fails for similar reasons previously discussed.

As already noted, RFC is the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a). An ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(3). SSR 96-8p elaborates that:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule

SSR 96-8p, 1996 WL 374184, *1 (July 2, 1996).

As the ALJ stated: "The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3." (Tr. 112). To meet a listing, a claimant must have a mental impairment that results in at least one extreme or two marked limitations in the four broad areas of mental functioning. (Tr. 111). Here, the ALJ found Estes did not meet the criteria. She assessed Estes as having only moderate limitations in three areas and a mild limitation in the fourth area. (Tr. 111-112). So, finding a "moderate limitation" in one particular area is relatively weak evidence to show the kind of impairment in mental functioning that Estes suggests exists.

And closer examination of the ALJ's analysis in the area of "concentrating, persisting, or maintaining pace" reveals why the ALJ did not find that Estes suffered from a marked or extreme limitation in this area. To support her finding, the ALJ explained:

> The medical evidence of record shows the claimant generally did not complain to treating or examining practitioners of serious difficulty maintaining concentration, persistence, and pace. The claimant often reported adequate symptom control from psychiatric medications. Mental status examination results show the claimant had no serious problem completing serial sevens and other calculations. Additionally, treating and examining practitioners did not observe that the claimant was overly distractible or slow. He has also reported doing a variety of daily tasks that require some concentration, persistence, and pace. The claimant testified that he is able to do household chores daily. (Exhibits 1F/48-52; 2E; 4E; 17E; Hearing Testimony).

(Tr. 111). While Estes points to some records to support his position, he does not actually contest the ALJ's finding that Estes had only moderate limitations in this area of mental functioning. (Doc. 27, pp. 33-34). Even if he had challenged this finding, the ALJ supported her position with substantial evidence not only at steps two and three, but also in her RFC analysis.

The ALJ acknowledged that Estes alleged disabling symptoms stemming from his PTSD (Tr. 113), which the ALJ determined were significantly associated with his alcohol and marijuana consumption (Tr. 116). Even when Estes abused alcohol, the ALJ noted he was generally found to have no more than moderate findings on objective examination. (Tr. 116 (string citations omitted)). And when Estes was sober, many of his symptoms were alleviated. (Tr. 116, 760-761). For

example, Estes went almost one year without a significant treatment visit until he relapsed to alcohol and marijuana consumption (Tr. 116-117, 512-517).

Finally, the ALJ expressly considered the type of off-task limitation Estes argues for here. She posed a hypothetical question to the vocational expert that included a limitation of being "off task mentally for 20% of an 8-hour workday." (Tr. 276). While she ultimately did not include this limitation in the RFC for the reasons already provided, the question demonstrates her consideration of this limitation.

In sum, although the objective findings support limitations associated with Estes's mental impairments, the record as a whole, including mental status findings, the periods without hospitalization, and Jacobs's opinion, support the ALJ's decision that, on a sustained basis, Estes could perform simple tasks with simple instructions and have limited contact with others. While Estes disagrees with the ALJ's conclusions, the court may not reweigh the evidence. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). Here, there is such relevant evidence as a reasonable mind might accept as adequate to support the ALJ's findings. Therefore, substantial evidence supports the ALJ's mental RFC finding.

**F.    Whether the jobs cited by the ALJ fit within the RFC**

Finally, Estes argues the four jobs cited by the ALJ fail to comply with the

RFC. Three jobs (dishwasher, photocopy machine operator, and marker) require the ability to carry out detailed instructions, which Estes claims contradicts the RFC limitation of performing simple instructions and simple routine repetitive tasks. He then claims the fourth job (laundry laborer) requires work around dangerous machinery that may harm self or others and with vibratory equipment in violation of the RFC. (Doc. 27, pp. 45-48).

In *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018), the Eleventh Circuit held that ALJs "have an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the [Dictionary of Occupational Titles ("DOT")] and resolve them." If any apparent conflict exists, the ALJ must do more than simply ask the vocational expert whether her testimony is consistent with the DOT—the ALJ must "offer a reasonable explanation for the discrepancy, and detail in [her] decision how [she] has resolved the conflict." *Id.* The failure to do so "means that the ALJ's decision, when based on the contradicted [vocational expert] testimony, is not supported by substantial evidence." *Id.*

The issue here is whether an "apparent conflict" existed to trigger this duty. An "apparent conflict" means "a conflict that is reasonably ascertainable or evident from a review of the DOT and the [vocational expert's] testimony… even if, after further investigation" it turns out there was no discrepancy. *Id.* at 1365. This Court agrees with the Commissioner and finds no apparent conflict. (Doc. 27, pp. 48-58).

Recent Eleventh Circuit precedent forecloses Estes's argument that the dishwasher, photocopy machine operator, and merchandise marker occupations conflict with the RFC. In *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1134 (11th Cir. 2021), the court determined that there was no apparent conflict between an RFC that limited the claimant's ability to "understand, carry-out, and remember simple instructions" and jobs like these that require a reasoning level of two. Rather, the Eleventh Circuit concluded that the difference between a reasoning level of one and a reasoning level of two was the "length" of the instruction, not the complexity. *Id.* at 1135.

Moreover, the ALJ did not err in finding Estes could perform the laundry laborer job. Estes relies on the narrative description of "laundry laborer" such that it requires placing bundles on and off conveyor belts and operating power hoists to load and unload washing machines and dryers. (Doc. 27, pp. 47-48). But the DOT explicitly notes neither vibration, nor the environmental conditions of moving mechanical parts, electric shock, high exposed places, radiation, explosives, or toxic caustic chemicals are present for jobs in this occupation. In fact, the only environmental conditions that exist for this job are a moderate noise level and frequent wetness or humidity. Laundry Laborer, DOT 361.687-018, 1991 WL 672992. Thus, when answering the ALJ's hypothetical question, there was no actual or apparent conflict between the representative occupations identified by the

vocational expert and the RFC.

## III.   Conclusion

Upon consideration of the submission of the parties and the administrative record, the decision of the Commissioner is supported by substantial evidence. Accordingly, it is **RESPECTFULLY RECOMMENDED**:

The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court be directed to enter judgment in Defendant's favor.

Reported in Fort Myers, Florida on August 2, 2021.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**