UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RYAN DALE ESTES,

    Plaintiff,

v.   Case No. 2:20-cv-225-JLB-NPM

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

# ORDER

Plaintiff Ryan Estes appeals the Commissioner of Social Security's ("Commissioner") final decision denying his claim for disability insurance benefits. (Doc. 1.) The Magistrate Judge issued a Report and Recommendation, recommending that the Court affirm the Commissioner's decision. (Doc. 29.) Upon review of the record, the Report and Recommendation, and Mr. Estes's timely objections (Doc. 31), the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

A district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). When a party makes a timely and specific objection to a report and recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. Legal conclusions are reviewed de novo even without an objection. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994).

In this Social Security appeal, the Court must determine whether the administrative law judge's ("ALJ") decision is "supported by substantial evidence and based on proper legal standards." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. The Court may not decide the facts anew, reweigh evidence, or substitute its judgment for the ALJ's. Id. Even where the Court finds that the evidence more likely supports a different conclusion, the ALJ's decision must be affirmed if it is supported by substantial evidence. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

## DISCUSSION

Mr. Estes raises two objections to the Magistrate Judge's Report and Recommendation. He first contends that the ALJ failed to ensure that he knowingly waived his right to representation at the hearing before the ALJ and that he was prejudiced by the lack of representation. Mr. Estes next contends that the ALJ failed to adequately consider and develop the record concerning his physical impairments, specifically a left knee injury and urinary incontinence. However, as the Magistrate Judge correctly determined, the record demonstrates that Mr. Estes knowingly waived his right to representation, he did not suffer any prejudice by his lack of representation, the record was sufficiently developed, and the ALJ's determination as to Mr. Estes's physical impairments was supported by substantial evidence. Both objections are therefore overruled.

**Objection 1: The ALJ improperly failed to ensure that Mr. Estes knowingly waived his right to representation at the ALJ hearing.**

In support of his first objection, Mr. Estes asserts that the Magistrate Judge improperly concluded that Mr. Estes's representation during the Appeals Council proceeding and this appeal indicates that he was aware of his right to representation at the ALJ hearing. (Doc. 31 at 1–2.) Mr. Estes further contends that, despite the ALJ being aware of his mental conditions, the ALJ did not inform Mr. Estes that free representation and fee-based options were available. (Id. at 2–4). However, Mr. Estes's first objection is unpersuasive. As the Magistrate Judge correctly determined, and even without consideration of Mr. Estes's subsequent representation, the ALJ properly ensured that Mr. Estes knowingly waived his right to representation. Even if not, Mr. Estes has not shown that he was prejudiced by the lack of representation.[1]

Following the initial denial and denial upon reconsideration of his application for disability insurance benefits, Mr. Estes requested a hearing before an ALJ. (Doc. 17-2 at 108; Doc. 17-4 at 2–25; Doc. 17-5 at 14–15.) He appeared at the hearing without representation and signed a "Waiver of Representation" form. (Doc.

---

[1] "[A] Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." Reynolds v. Soc. Sec. Admin., 679 F. App'x 826, 827 (11th Cir. 2017) (quotation omitted). "The Commissioner has a duty to notify a claimant in writing about 'the options for obtaining' a lawyer, including 'the availability to qualifying claimants of legal service organizations which provide legal services free of charge.'" Id. (quoting 42 U.S.C. § 406(c)). "If a claimant is not informed adequately of her right–either in a prehearing notice or at the hearing–a claimant cannot knowingly and intelligently waive her statutory right to counsel." Id. at 827–28 (internal quotation marks, citation, and brackets omitted) (emphasis added).

3

17-3 at 115–17; Doc. 17-5 at 59.)  The following exchange occurred at the beginning of the hearing:

> **ALJ**: . . . Did you read your right to representation the guard handed you those rights?  How are you feeling, do you want a one-time continuance to try to get representation[?]  That means that we come back again in either 30 to 60 days, or longer if you want to take longer to try to get a representative.
>
> **Mr. Estes**: No, ma'am, I can't afford anything and then when – if I ever do get the disability, I need to pay bills with it and I can't afford one dollar.
>
> **ALJ**: Okay, now there is legal aid that will sometimes –
>
> **Mr. Estes**: I'm okay.  I'll just have faith in the system.
>
> **ALJ**: Okay.  Okay, so you want to go forward today without –
>
> **Mr. Estes**: Yes, ma'am.
>
> **ALJ**: – representation?  All right, so Ms. Cindy is going to give you some paperwork and a pen.  So, Ms. Cindy, we're going to sign the 827, which is the authorization form and then the waiver of representation.
>
> **Vocational Expert**: Yes.  He signed the release forms already.

(Doc. 17-3 at 116–17.)  The ALJ thus explained that the hearing could be continued to allow Mr. Estes to obtain representation and ensured that he wanted to proceed without representation.  In direct response to Mr. Estes's concerns about the cost of representation, the ALJ mentioned the possibility of legal aid, but Mr. Estes maintained that he wanted to proceed without representation.  By signing the waiver of representation form, Mr. Estes further acknowledged:

> I have been advised both in writing and orally, and understand that I have a right to be represented in this hearing by an Attorney or other capable and qualified person of my choice.

4

> I have considered this matter, and have decided of my own free choice to voluntarily waive my right to such representation, and wish to proceed without a representative. I do not waive my right to legal representation in other hearings or appeals. . . .

(Doc. 17-5 at 59).

Similarly, Mr. Estes was sent several written notices at various stages of the administrative proceeding advising him of his right to be represented. (Doc. 17-5 at 3, 9, 17, 37.) Prior to the hearing, he received a document titled "Your Right to Representation," which provided information about representation and contact information for an organization that could assist him in obtaining representation and organizations that provide free legal services. (Doc. 17-5 at 20–25, 42–43; Doc. 17-3 at 118.) And in his request for a hearing he acknowledged that he "understand[s] [he has] a right to be represented and that if [he] need[s] representation, the Social Security Office or hearing office can give [him] a list of legal referral and service organizations to assist [him] in locating a representative." (Doc. 17-5 at 14–15.)

Mr. Estes does not identify any stage in the proceedings at which he was confused as to his right to representation or his waiver of that right.[2] And he cites

---

[2] Mr. Estes's suggestion that, due simply to his mental impairments, he lacked the capacity to understand his right to representation or was unable to "adequately represent himself" is unpersuasive. (Doc. 31 at 5); cf. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."). Indeed, during the hearing Mr. Estes was coherent, answered the ALJ's questions, and followed instructions to submit additional documentation. This supports a finding that he knowingly waived his right to representation. See, e.g., Hedges v. Comm'r of Soc.

no authority in support of the proposition that the ALJ's purported failure to fully inform him of the availability of free representation or fee-based arrangements renders his waiver invalid. In summary, the record demonstrates that he knowingly waived his right to representation at the hearing. See Coven v. Comm'r of Soc. Sec., 384 F. App'x 949, 950–51 (11th Cir. 2010) (finding waiver valid where claimant received three notices advising her of the right, was reminded by the ALJ that she could obtain representation, and executed a written waiver during the hearing).

Even if Mr. Estes's waiver was somehow deficient, the ALJ nevertheless fulfilled her duty to develop a full and fair record. See Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (imposing a "special" duty to develop full and fair record where right to representation has not been waived).³ For example, the ALJ left the record open to allow the inclusion of any missing medical records, statements, a power of attorney, and letters in support of the application. (Doc. 17-3 at 119–20,

---

Sec., No. 2:19-cv-833-FtM-MAP, 2021 WL 1186836, at *11 n.8 (M.D. Fla. Mar. 30, 2021). And Mr. Estes cites no authority in support of the proposition that the ALJ was required to state on the record a determination that Mr. Estes was "capable of making an informed choice to waive the right to representation." (Doc. 31 at 2.)

³ As the Eleventh Circuit instructs, "[t]his special duty requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel, but not that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ." Coven, 384 F. App'x at 951 (internal quotation marks and citation omitted); see also Kelley v. Heckler, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985) (requiring "a more specific showing of prejudice"). Notably, despite the ALJ's duty to develop a full and fair record, it is the claimant who bears the burden to establish that he is disabled and, "consequently, he is responsible for producing evidence in support of his claim." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citations omitted).

6

125, 133, 142–44, 153–54; Doc. 17-2 at 89–91; Doc. 17-16 at 74–79; Doc. 17-7 at 18–27; Doc. 17-8 at 2–12.)  Mr. Estes does not identify any relevant medical evidence missing from the record.  And the ALJ inquired into, among other things, how Mr. Estes's symptoms affected him.  (Doc. 17-3 at 128–31, 134–42); see Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) (finding no prejudice based in part on ALJ's questioning of claimant).

Moreover, although Mr. Estes asserts that he was prejudiced because no consultative examination was performed to determine whether his knee impairment affected his ability to work and there was no "development of [his] urinary problems," (Doc. 31 at 6), the ALJ was not required to order a consultative examination because "the record contain[ed] sufficient evidence for [the ALJ] to make an informed decision." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted).  Indeed, the record included hundreds of pages of treatment records from Veterans Affairs and hospitalization records.  In any event, a "claimant cannot show prejudice by speculating that [he] would have benefited from a more comprehensive hearing." McCabe v. Comm'r of Soc. Sec., 661 F. App'x 596, 599 (11th Cir. 2016) (citation omitted).[4]

---

[4] Mr. Estes does not specify how he was prejudiced by his failure to ask questions of the vocational expert or his lack of understanding as to his date last insured or his ability to modify his alleged onset date. (Doc. 31 at 3–5.)  For example, he does not propose any questions that should have been asked of the vocational expert, and although he asserts that "[a] qualified representative would have been aware of the significance of the [date last insured] and could have advised [Mr. Estes] not to rely on developments after that date," he does not explain how such reliance adversely affected him.  (Id. at 4.)  And unlike in Brown, 44 F.3d 931, here, the ALJ did not fail to obtain current medical records, and there are no

7

In short, even if Mr. Estes's waiver of his right to representation was defective, he has not shown that the ALJ failed to fully develop the record or that he otherwise suffered prejudice. Accordingly, Mr. Estes's first objection is overruled.

**Objection 2: The ALJ failed to adequately consider and develop the record concerning Mr. Estes's physical impairments.**

In support of his second objection, Mr. Estes raises contentions relating to purported limitations caused by a left knee injury and his urinary incontinence. (Doc. 31 at 7–10.) Mr. Estes's second objection is also unpersuasive.

Mr. Estes first contends that the Magistrate Judge improperly discounted as "not relevant to the period in question" treatment notes from 2006 or 2007 following an injury to his left knee that preceded the 2014 alleged onset date. (Id. at 7.) Mr. Estes reasons that the records were relevant because although the injury occurred in 2006 or 2007, the resulting medical condition could still require treatment and affect his ability to work between the alleged onset date and the date last insured. (Id.) He also argues that, given these medical records, the ALJ should have ordered a consultative examination. (Id.)

However, as Mr. Estes acknowledges, a prior examination was performed, during which he stated that his left knee was unstable, swells, and dislocates in certain positions. (Id.; Doc. 17-11 at 21.) That record, which was presented to the ALJ, further noted that, despite a 2008 ACL tear in Mr. Estes's left knee, the

---

gaps in medical records. Rather, as noted, the ALJ left the record open to obtain additional documentation.

8

diagnosed conditions did not "impact his . . . ability to perform any type of occupational task (such as standing, walking, lifting, sitting, etc.)." (Doc. 17-11 at 29.)

As noted, the ALJ did not err in failing to order a consultative examination, and the record was sufficiently developed to allow the ALJ to make an informed decision. (See Doc. 17-10 at 52; Doc. 17-11 at 21, 29–30.) Furthermore, substantial evidence supported the ALJ's decision not to include the left knee impairment in the residual functional capacity ("RFC") and hypotheticals posed to the vocational expert.[5] Put simply, the record did not contain medical evidence reflecting functional impairments caused by Mr. Estes's left knee impairment, and the ALJ need not include unsupported findings or impairments without functional limitations in either the RFC or hypotheticals. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004); see also Ingram, 496 F.3d at 1270.

Mr. Estes next contends that the ALJ "failed to consider [his] urinary incontinence, which would necessitate many breaks during the workday," erred in finding urinary continence medically determinable but non-severe, and erred in failing to include related limitations in the RFC and hypotheticals. (Doc. 31 at 9.)

---

[5] An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations caused by impairments. See Delker v. Comm'r of Soc. Sec., 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In formulating the RFC, the ALJ must consider all impairments that may cause functional limitations. Id.; 20 C.F.R. §§ 416.945(a)(1), (3); 20 C.F.R. §§ 404.1545(a), 416.945(a) (requiring consideration of "all the relevant evidence in [a] case record").

As an initial matter, because the ALJ characterized other impairments as severe, any error in deeming Mr. Estes's urinary incontinence non-severe was harmless.  See Ball v. Comm'r of Soc. Sec. Admin., 714 F. App'x 991, 993 (11th Cir. 2018).  Additionally, contrary to Mr. Estes's assertions, the ALJ did consider his urinary continence.  As the ALJ explained, there were "no significant objective medical findings or identification of limitations in the record."  (Doc. 17-2 at 110–11; Doc. 17-9 at 4, 15, 25, 33, 42, 48, 52.)  Mr. Estes was provided and wears adult undergarments for the impairment.  (Doc. 17-11 at 173.)  Moreover, although performed after the date last insured, a May 20, 2019 cystoscopy was normal, and Mr. Estes had not seen a urologist, and, even more, declined a referral to a urologist and medication to treat the impairment.[6]  (Doc. 17-2 at 111; Doc. 17-10 at 55; Doc. 17-16 at 98.)

In summary, the record was sufficient to allow the ALJ to make an informed decision and contained substantial evidence to support the decision not to include Mr. Estes's continence in the RFC and hypotheticals.[7]  Accordingly, the Court

---

[6] At the time of the hearing before the ALJ, Mr. Estes had not undergone a cystoscopy, and he testified that he had a forthcoming appointment with a urologist. (Doc. 17-3 at 129–30.)

[7] Mr. Estes's reliance on Powell v. Astrue, 250 F. App'x 960 (11th Cir. 2007), is unavailing.  (Doc. 31 at 9.)  There, the ALJ improperly rejected the claimant's "nuanced account of the limitations" caused by her persistent bowel incontinence. Powell, 250 F. App'x at 964.  Further, the claimant had "presented at least two doctors' reports associating her incontinence with the severe physical impairments the ALJ found her to have."  Id.  In contrast, the ALJ here did not discredit Mr. Estes's account of his impairments.  Rather, his account—and the medical evidence of record—did not indicate any functional limitations caused by his incontinence.

cannot conclude that the ALJ failed to apply the correct law or that her finding was not based on substantial evidence. The second objection is therefore also overruled.

## CONCLUSION

After an independent review of the record, including a de novo review of the portions of the Magistrate Judge's Report and Recommendation specifically objected to and the conclusions of law, it is **ORDERED**:

1. Mr. Estes's objections to the Magistrate Judge's Report and Recommendation (Doc. 31) are **OVERRULLED**.

2. The Report and Recommendation (Doc. 29) is **ADOPTED** and made part of this Order.

3. The decision of the Commissioner denying disability insurance benefits is **AFFIRMED**.

4. The Clerk is **DIRECTED** to terminate any pending deadlines and motions and close the file.

**ORDERED** in Fort Myers, Florida, on September 1, 2021.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

11